The floor is yours, United States v. Gonzalez-Perez. Ms. Schneider. Thank you. May it please the Court, my name is Tina Schneider. I'm here representing the defendant, David Gonzalez-Perez. My client was convicted of charges arising out of Operation Guards Shack, the FBI sting operation in Puerto Rico. He provided security for 15 fake drug deals. He was convicted of drug offenses arising out of transactions 2 through 15. He was acquitted of all charges arising from the first transaction and acquitted of all firearms charges arising out of all the transactions. I'd first like to address the Court's failure to give an entrapment instruction. The standard for entitlement to the instruction is looking at the evidence in the light most favorable to the defendant without weighing the evidence, making credibility determinations or resolving conflicts in the evidence. Is there evidence in the record to plausibly support the defense? Here there was. First, turning to improper government inducement, it's clear that there has to be not only opportunity to commit the crime, but an extra, a plus factor, which can be excessive pressure, intimidation, dogged insistence. There was evidence here of relentless hounding, exploitation of the defendant's financial stringency and threats. And what evidence in the record do you rely on for this dogged insistence? Okay, there was a 15-month period in between the time that Cotto, the confidential and the first transaction. And during those 15 months, there was evidence of persistent phone calls and visits by... What evidence? At trial, what evidence? There was evidence, testimony by Mr. Cotto, that he made these repeated phone calls and he visited the defendant at home. He testified that he kept calling my client. There was evidence, and that was corroborated by my client. There was evidence of repeated unsuccessful attempts by Mr. Cotto to buy drugs from the defendant. That was testified to by Mr. Cotto and by my client. There was testimony of an unsuccessful request by Mr. Cotto in February, so kind of midway during this 15-month period, that he tried to get my client to engage in illegal activity. Did your client and Mr. Cotto agree as to what transpired during those 15 months? They agreed that there were several phone calls and visits by Cotto. Several is different from numerous. Mr. Cotto did testify that month after month, he tried to buy drugs from my client unsuccessfully. He did testify that he kept calling... I'm missing the point. Here he's enrolled to, although he's a former police officer, to guard drug transactions carried out by others. And so the entrapment defense is to being enrolled in that. What does separate private drug dealing have to do with it? The entrapment defense can be that the government was repeatedly trying, insistently trying to get the defendant to engage in illegal activity. And in fact... And it doesn't matter what activity? No, they can shift their... If they're trying to entrap the defendant, they can shift their court where the government did just that, tried to get the defendant to do one kind of illegal activity and then shifted into another. So we have this relentless hounding that is supported both by evidence, testimony by Mr. Cotto and by my client. Then we have when he lost his job, that Mr. Cotto was aware of this, and that the frequency of his phone calls increased. Then we have September of 2009... Yes, Mr. Cotto says your client also was incessantly looking for a drug job. Mr. Cotto's testimony and my client's testimony diverged on many points. But when we're evaluating whether someone's entitled to an entrapment instruction, it is not a weighing of the evidence. It is not a credibility determination. The question is, is there some hard evidence in the record to support it? And here there was. And there was testimony by my client which is sufficient. But more than that, it was corroborated by Mr. Cotto and the FBI agent in some respects by the FBI agent who played the drug lord. What did the FBI agent have to say on this point? He said that he instructed Mr. Cotto to ask for a list of names and home addresses of everyone so that if anything happened, they would know where people lived. And that is evidence of a threat. So just continuing, so there's this exploitation of my client's financial stringency when Mr. Cotto ups the ante and starts calling more frequently once my client lost his job. And finally we have the threat that happened immediately after the first transaction. So my client's testimony was, I did not know this was going to be a drug transaction when I went to transaction number one. His testimony was, Cotto said, do you want to do work security with me? It's going to pay $2,000. My client participated immediately afterwards. He met with Cotto, according to his testimony, and he's freaking out and says to Cotto, you didn't tell me it was going to be a drug deal. And Cotto says, Mr. Eddy, the drug lord, the faux drug lord, has Triggerman on his payroll and you have to continue participating. So we have that threat. Now remember that the jury acquitted my client of the first transaction, apparently believing his testimony that he did not know it was a drug deal at that point. So then we get this immediate threat by Cotto to my client, which leads him to continue participating in the remaining transactions. Now the question is not whether the evidence compelled a finding of entrapment. The question is whether there was any evidence on the record that could lead a reasonable jury to find entrapment. And there was, and so the court erred in not giving that instruction. The second prong is lack of predisposition. Firstly, the question that should be asked is the predisposition to commit this crime. Not crimes in general. This court's opinion induced there said, you know, the defendant there was no stranger to criminal activity. He was a counterfeiter. But he had no predisposition to commit the crime charged in that case, which was a felon in possession of a firearm or procuring a firearm. What was the prior conviction of your client? The prior conviction of my client was a misdemeanor conviction for dereliction in the commission of his duties as a police officer. As a police officer. Excuse me? Wasn't the charge that he accepted a bribe as a police officer to see that there was a certain outcome? That was the original charge. That was not what he was convicted of. He was originally charged with bribery. He was convicted of dereliction in the commission or omission in the commission of his duties. And even if it had been bribery, that is not a drug-dealing crime. It's a different sort of crime. The second point here is that when determining But there seems to be a certain inconsistency between point one and point two in your argument. Which is, Your Honor? I raise the question about whether their private drug-dealing had anything to do with inducement to engage in the crimes he did engage in. But there are two separate prongs here. Oh, yes. And you're saying there are different rules for each prong. Yes, I am. If I can just finish. The focus for lack of predisposition is on the defendant before the sting operation began. And so the evidence that was on the record that showed lack of predisposition is the defendant's rejection of Cotto's suggestion that he sell drugs or engage in illegal activity. The fact that he had no past drug involvement. The fact that there was a 15-month period during which Cotto tried to get my client to engage in illegal activity. And the fact that he did not know that first transaction was a drug deal. All of those facts put together were sufficient evidence to warrant the court giving an entrapment instruction. Ms. Schneider, are you aware of any case from the circuit where the testimony of the defendant alone has been considered sufficient to raise the entrapment defense? I think there is, Your Honor. And I'm blanking on it now. If I could just look through my cases. Ben Mayer done that. Thank you. Thank you. Ms. Dominguez. Yes. Good morning, Your Honors. May it please the court. Maria Dominguez for the United States. We're ready to proceed. I will note for the court that I was not trial counsel, but I am familiar with Operation Guard Shack. Did try at least one of those cases and I'm quite familiar with the record.          Yes, sir. Ms. Dominguez. Yes, sir. Ms. Dominguez. Yes, sir. Ms. Dominguez. Yes, sir. I'm going to take up where your sister left off. What, why isn't the defendant's testimony sufficient here to at least have raised the issue of entrapment? Yes, Your Honor. And to require that the trial judge have given the instruction? Yes, Your Honor. I believe that if you review the case in this, the case on this circuit with respect to that, hard evidence is required that if believed would leave a reasonable person to the requisite conclusion. In other words, that in this case, entrapment could be found by a reasonable juror. The cases that I have read point to the testimony of the defendant being one of those factors, but that there is a requirement for some sort of corroboration even if it's circumstantial. As I was listening to counsel's allocution to the court, it struck me that we must be looking at different records. I think it is very telling that the testimony of a defendant at trial can be highly self-serving. I think in this case, the evidence, ample evidence of the videos and audio recordings, dozens of them, between Mr. Gonzalez-Perez and between Hector Cotto, the government informant, are highly revealing. For example, with respect to the predisposition, counsel would like this court to believe, and the defendant painted himself as such, as a victim of circumstance, someone who was doggedly pursued and fell victim to the trickery of Mr. Cotto. That is hardly the person that Mr. Gonzalez-Perez reveals himself to be in these recordings. He claims that he did not know that he was going to a drug transaction yet. If we look at the audio tapes of August before, several weeks before the first drug transaction, which was in September of 2009, what does Mr. Gonzalez-Perez say to Hector Cotto in that conversation? He first of all manifests distrust over anyone else that might be brought to the drug transaction. He tells Mr. Cotto that he is not comfortable speaking over the phone. He tells them that he is more than willing to participate if Cotto is not going to play him for a fool and is actually going to pay him. Your sister's response to that, which was explicit, was the jury must have accepted his view of it because they acquitted him on the charges having to do with the first drug deal. Well, I think, Your Honor, that we're not in a position to say that that's what the jury thought. I think that they may have well thought that 14 convictions were not enough for 14 other drug deals when there was no question that he knew that they were drugs was sufficient. They did convict on multiple counts of 841 or attempt. In any event, Your Honor, if I could, I would like to point to the record because I think that the factual testimony... rely on the testimony of the defendant himself to the exclusion of other evidence in the case. Correct. And furthermore, that the government would be opposed to such a construction. And the facts of this case are a good example as to why that would be the wrong rule to adopt. Absolutely, Your Honor. Absolutely. I'd like to point out, first of all, with respect to the predication before I get to the inducement, with respect to the inducement, that we have to take the defendant as he was before the first drug deal in September. What do we know about Gonzalez Perez before the first drug deal? We know that he was a former police officer who was fired not for just dereliction of duty, but he engaged in bribery. Now, counsel would ask this court to believe that that is an offense that is wholly unconnected to the crimes for which he was convicted and sentenced to the extent that it should not be considered to determine his predisposition. But let's look not at the conviction, let's look at the facts underlying the bribery. He let a drug trafficker, someone who had drugs and a gun, he let that person walk. How is that not connected with his proclivity to commit a drug trafficking offense? Clearly he is showing no respect for the drug trafficking laws, no respect for upholding the laws of a police officer. From whom did he take that bribe? I'm sorry? From whom did he take that bribe? From a prospective defendant. From the defendant himself? Yes. Prospective defendant in the state court.  Absolutely. And he was involved with Cotto. Cotto was well aware that Don Salas Perez, like himself, was a corrupt cop. And, you know, we're not suggesting that Mr. Cotto was a saint. Mr. Cotto was a dirty cop and that's why he was so effective at being used as an informant in this case. And Mr. Cotto, the first calls that he made to him after he was arrested by the feds, had nothing to do with Operation Guard Shack. The police had arrested him, the FBI had arrested him for his participation in the bribery offense. And the co-defendant, potentially in that case, was Mr. Gonzales Perez. And early efforts and recorded phone calls between Mr. Gonzales Perez and Cotto had to do with that, with the FBI trying to uncover Gonzales Perez's and corroborate his involvement in the bribery. It had nothing to do with Operation Guard Shack because Operation Guard Shack did not occur for over a year after that. So with respect to dogged persistence, I take issue with that characterization because the testimony of Mr. Cotto was that Gonzales Perez hounded him to include him in his drug business because he was playing the role of a drug trafficker. In any event, I believe that the readiness of Mr. Gonzales Perez to commit the offense is something, a compelling and important factor that this court can and should take into consideration when it considers his predisposition. His sophistication while he is acting in this security detail and taking, if you will, a leadership role. It is obvious from the recordings that Mr. Gonzales Perez took a leadership role. He is the one that is first being the on the members of the security team what to do, how to conduct themselves, how to display their weapons. He is also the one that is getting paid more than the others. He is not only himself participating, he is bringing others including police officers who were serving at the time to these drug deals. We cannot say that Mr. Gonzales Perez under these circumstances is an innocent law abiding citizen who was somehow tricked by Mr. Cotto to participate in these drug deals, repeated drug deals. Also, counsel suggested that Mr. Gonzales Perez perhaps was fearful and that is why he continued to participate, not because he was a criminal at heart. But your honors, common sense goes a long way towards dispelling that notion. If he was so afraid, does it stand to reason that he would bring his own drug deals? Does it make sense that he would bring his sister-in-law to a drug deal? His best friend, his barber, his neighbors? It stands to reason that in fact he was credibly fearful of Eddie and of Mr. Cotto. He would not have involved his immediate family in these drug transactions. In addition to that, if the court evaluates the nature of the banter between Mr. Gonzales Perez and between Cotto and between Eddie and Mr. Gonzales Perez, it is more than evident that he is not afraid at all. There is not intimidation involved in those conversations. There is an easy banter between two people who are familiar and comfortable with each other and Mr. Gonzales Perez feels comfortable enough in the context of those conversations to make demands of Cotto. You've got less than a minute left. Let's talk about whether he was entitled to a separate instruction on impeachment by prior conviction. The district court does seem to have made a mistake there. Your honor, I agree that two of the witnesses, Cotto and Eusebio Hernandez, had a prior conviction. But I would suggest to this court that there is no magic in one particular instruction over another. What is important is for the jury to know that these people have a conviction, these witnesses, and that those convictions can be considered in determining credibility and in weighing the weight that they're going to give that testimony. And the instruction that was given by the Honorable Judge Delgado sufficiently apprised the jury of that fact. Okay. Thank you.